IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN AUGUSTE, *et al.*,  :

    Petitioners,

  v.  :  Case No. 3:19-cv-33

SYNCHRONY BANK,      JUDGE WALTER H. RICE

    Respondent.  :

---

DECISION AND ENTRY SUSTAINING PETITION TO COMPEL ARBITRATION (DOC. #1); OVERRULING RESPONDENT'S MOTION TO COMPEL COMPLIANCE WITH THE COURT'S ORDER AND THE FEDERAL ARBITRATION ACT AND TO DISMISS PETITIONERS' PETITION TO COMPEL (DOC. #10); NO ATTORNEY'S FEES TO BE AWARDED TO EITHER PETITIONERS OR RESPONDENT; TERMINATION ENTRY

---

This matter is before the Court on a Petition to Compel Arbitration ("Petition") pursuant to § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, and Respondent's Motion to Compel Compliance with the Court's Order and the FAA, and to Dismiss Petitioners' Petition to Compel ("Motion"). Doc. #10. Respondent moves for dismissal based on the following: (1) this Court's prior decision and order compelling individual arbitration in *Mason, et. al. v. Synchrony Bank*, No., 3:17-cv-314, 2018 WL 527981 (S.D. Ohio Jan. 22, 2018) ("*Mason*"); (2) Petitioners' failure to comply with § 4 of the FAA, 9 U.S.C. §4; and (3) Rule 12 (b)(1) of the

Federal Rules of Civil Procedure. Both Petitioners and Respondent request attorney fees and costs.

Petitioners have filed a Memorandum in Opposition to Respondent's Motion. Doc. #15.

Both Petitioners and Respondent argue, for different reasons, that the decision in *Mason* supports their respective positions. Accordingly, before engaging in an analysis of the parties' legal arguments, the Court will review the Petition, including the agreements reached by the parties after its filing, followed by a discussion of the *Mason* decision.

I. Background

A. Petition to Compel Arbitration

On January 31, 2019, a Petition to Compel Arbitration ("Petition") was filed by 20 former employees of Respondent, Synchrony Bank ("Respondent" or "Synchrony").[1] Petitioners seek an order from this Court pursuant to 9 U.S.C. §4, of the Federal Arbitration Act ("FAA"). The Petition states that following this Court's decision in *Mason,* in which Synchrony's motion to compel arbitration was sustained, Petitioners attempted to begin the arbitration process with Synchrony, but Respondent has since refused to arbitrate with Petitioners.

---

[1] Petitioners consist of John Auguste, Leah Azu, Rachel Ballard, Diana Burton, Timothy Clark, Jacklyn Cropper, Yahaira Diaz-Reyes, Jack Dowdle, Bailey Fulks, Casandra Goudelock, Albert Holland, Lakethia Jones, Gerald Martin, Mary Mason, Karetta Partridge, Shelby Patton, Richard Rose, Ashley Steverson, Mariah Varkonda and Alex Warner.

Petitioners contend that an order to compel arbitration is necessary because the "[P]arties have a dispute regarding the procedures required to submit" claims under Respondent's two alternative dispute resolution ("ADR") programs, "the Solutions program" and "the Resolution program." Doc. #1, PAGEID#6. Specifically, the Petition alleges disputes regarding two separate issues in the pre-arbitration stage for the two ADR programs.

As alleged in the Petition, the first issue concerns Respondent's refusal "to accept [from Petitioners] the Level I submissions" which consisted of "individual digitally-signed notices of intent to arbitrate." *Id*. Although not stated in the Petition, "Level I submissions" are part of pre-arbitration portion of the Resolution ADR Program. Doc. #11-1, PAGEID#71.

The second issue, which allegedly led to the filing of the Petition, is stated as follows:

> The Parties also disagree as to the applicability, interpretation and enforceability of the ADR programs' provisions which require the [Petitioners] to attend the Level II meetings alone, without a representative, but allows the Respondent to have the Level I manager, a higher level manager, and 'other Company representatives' attend the Level II meeting. [2]

Doc. #1, PAGEID#7.

---

[2] Level II is a step in the Solutions Program. The parties have agreed that the Resolution program Level I is applicable under the Resolution program. Level II in Solutions is equivalent to Level I in Resolution.

3

Although again not stated in the Petition, the second issue, with its reference to "Level II meetings" and "other Company representatives," are part of the pre-arbitration Solutions ADR program. Doc. #11-2, PAGEID#93.

The Petition also cites to Section III (C) (19) of the Resolution ADR program and Section III (D) (18) of the Solutions ADR program. These two sections state that the arbitrator and "not any court" has "exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this Agreement including. . .any part of this Agreement that is voidable or void." *Id*., PAGEID#8. Because Respondent was "ordered by the Court [in *Mason*] to arbitrate," Petitioners assert that the arbitrator must decide the two pre-arbitration disputes alleged in the Petition and that Respondent must be ordered to move forward with these disputed issues in the arbitration process. *Id*., PAGEID#8.

Approximately two months after the Petition was filed, however, Respondent decided to accept, from Petitioners' counsel, "type-written signatures" of the individual Petitioners on forms stating that the claims would be heard pursuant to the Resolution and not the Solutions ADR program. Doc. #11-5, PAGEID#151. Following this agreement, Petitioners' counsel attempted to negotiate an agreement with Respondent's counsel permitting Petitioners to attend, with legal representation, the Level I Resolution pre-arbitration meeting via telephone. On March 21, 2019,

4

however, counsel for Respondent refused these requests and on April 1, 2019, Respondent's Motion was filed. *Id*.

Because of the agreements reached after the filing of the Petition, there is no longer any dispute concerning signatures and the only pre-arbitration ADR program at issue is the attendee issue at Level I of the Resolution program. As such, although counsel have apparently discussed the issue of attendance and representation for the Level I meetings under the Resolution ADR program, the Petition itself does not specifically reference this as a dispute.[3]

### B. The *Mason* Decision

In *Mason*, the plaintiffs, who are nearly identical to the petitioners herein, alleged violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201 et seq., and the Ohio Minimum Wage Fair Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01 et seq.[4] Shortly after filing their complaint, the plaintiffs filed a Motion for Conditional Certification requesting expedited opt-in discovery and

---

[3] Paragraph 34 of the Petition refers to "ADR programs' provisions which require the [Petitioners] to attend the Level II meetings alone, without a representative . . . " Doc. #1, PAGEID#7. Because Level II of the Resolution ADR is mediation and counsel for both sides are permitted to attend, although unstated, this paragraph 34 refers to the Solutions ADR program, which is no longer at issue. Doc. 11-1, PAGEID##71-73; Doc. 11-2, PAGEID##83, 92-94.

[4] Other than Petitioner, Jacklyn Cropper, all the other Petitioners herein were also plaintiffs in *Mason*.

5

court-supervised notice to potential opt-in plaintiffs. Synchrony then filed a Motion to Compel Individual Arbitration and Dismiss or, in the Alternative, to Stay the Proceedings. Synchrony argued that the plaintiffs were signatories to the two ADR programs, Solutions and Resolution. The ADR programs, although having slightly different language and covering employees during different dates of hire, required that (1) all employment-related disputes be arbitrated, including wage and hour claims, (2) there was no right to litigate a claim in state or federal court and (3) employees were required to arbitrate on an individual basis and not part of a class or collective action. *Id.*, at*1.

Synchrony argued, and this Court ultimately held, that there was compulsory arbitration of FLSA claims and compulsory individual arbitration of OMFWSA claims under *Huffman v. Hilltop Cos.*, 747 F.3d 391, 398-99 (6th Cir. 2014). The Court further found that the ADR programs, Solutions and Resolution, were valid agreements to arbitrate wage claims individually. Referencing "dicta in *Killion* and the majority of decisions within and outside the Sixth Circuit," *Mason* stated that it was "compelled to find a collective action waiver legal <u>within</u> the arbitration context." *Id*. at \*5 (emphasis in original) *Killion v. KeHE Distrib.*, LLC, 761 F.3d 574, 592 (6th Cir. 2014). Finally, *Mason* rejected plaintiffs' argument that the "waiver clauses were so ambiguous, confusing and devoid of detail" that their waiver of right to a jury trial was not knowing and voluntary and thus no agreement to arbitrate was made. On January 22, 2018, the Court granted the motion to compel arbitration and dismissed the plaintiffs' case with prejudice.

6

## II. Legal Analysis

### A. Respondent's Motion to Order Compliance with *Mason*

Respondents argue that Petitioners, by challenging the Level I meetings in the ADR process, have failed to comply with this Court's Order in *Mason.* That case, Respondent asserts, requires Petitioners to "arbitrate their claims 'individually under the procedures set forth in Solutions or Resolution.'" Doc. #11, PAGEID#41. According to Respondent, Petitioners had the opportunity in the *Mason* litigation to contest the pre-hearing meetings and mediation programs, which are alleged in the Petition, but did not do so. As such, Respondent argues, Petitioners are required by *Mason* to arbitrate in accordance with all the provisions set forth in the Resolution ADR program and "cannot take a second bite of the apple" by now contesting that the pre-arbitration provisions in the Resolution ADR program are unenforceable. Doc. #11, PAGEID#43. Notwithstanding Respondent's argument that Petitioners have "waived" their right to challenge the pre-arbitration process in the Resolution ADR program, Respondent contends that if the Court were to agree that the "'applicability, interpretation and enforceability' of Level I meeting attendees is a proper subject for an arbitrator," only that "limited issue [on a group-wide basis], and nothing else" should be sent to the arbitrator. Doc. #10, PAGEID#38.

Petitioners, however, contend that *Mason* "only analyzed the enforceability of the class-action waiver contained in the ADR Programs" and "not the enforceability of every procedural provision within the agreements." Doc. #15,

7

PAGEID#284. In short, "the Petitioners initiated their arbitration claims pursuant to the ADR Programs" because *Mason* ordered arbitration. Petitioners now contend that an aspect of the pre-arbitration process is "unenforceable and void" and should, as required by the Resolution ADR program, be interpreted by the arbitrator and not the Court. *Id.*, PAGEID#291.[5]

Although Respondent asserts that Petitioners "have flouted," "refused to comply" and "impermissibly defied" the Court's order in *Mason,* Doc. #11, PAGEID##49, and 52, the Court does not agree. As seen in the preceding discussion, *Mason* sustained Synchrony's "Motion to Compel Individual Arbitration" and dismissed plaintiffs' complaint with prejudice. In reaching this decision, the Court found enforceable the agreements to arbitrate the plaintiffs' employment claims under the FLSA and the OMFWS and the waiver of any right to collective or class actions in those agreements. The Court in *Mason* also found that the formation of the two ADR programs was valid. As such, *Mason* determined only that the arbitration provision was valid, leaving the parties to resolve their dispute in the arbitration setting. *Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. 17, 21 (2012) (although the validity of the arbitration provision "is subject to initial court determination . . .the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.").

---

[5]"The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this Agreement including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void …" Doc. #11-1, PAGEID#79

8

### B. The Petition Complies with § 4 of the FAA

Respondent next argues that the Petition "fails to state a claim" under §4 of the FAA, 9 U.S.C. § 4, asserting that the Petition (1) does not identify any "written agreement" for arbitration, as required by § 4 of the FAA, pursuant to which there has been any non-compliance by Synchrony and (2) does not show that Respondent has failed to comply with the Resolution ADR agreement.

The Court has reviewed the Petition and notes that it does cite to *Mason* and quotes from it that the claims must be "individually arbitrated under the procedures set forth in Solutions or Resolution." Doc. #1, PAGEID#7. The Petition next alleges that the "Parties disagree as to the applicability and interpretation of provisions for the submission of each Petitioners' claims under the ADR programs" and that a dispute exists regarding the procedures required to submit each Petitioners' claims. Doc. #1, PAGEID##7and 8. As noted earlier in this Decision and Entry, after the Petition was filed, Respondent agreed to accept the "type-written signatures" of the Petitioners and to use only the Resolution ADR program to arbitrate the claims. Although the Petition was never amended to reflect this change and fails to identify with specificity the section of the Resolution ADR program in dispute, the Petition does cite to "Section III (C) (19) of Resolution" which gives "[T]he arbitrator, and not any court or agency" the "exclusive authority to resolve any dispute." *Id.*, PAGEID#8. Additionally, Respondent has attached a copy of the Resolution ADR program, Doc. #11-1,

9

along with affidavits of counsel,[6] Doc. ##11-4 and 11-5, to its Motion. Based on a review of these exhibits, each party should have clearly understood that it was only the Resolution ADR program at issue and the concern was the pre-arbitration meeting at Level I. Accordingly, §4 of the FAA is satisfied.

### C. Collateral Estoppel, *Res Judicata* and Waiver

Finally, Respondent asserts that the Petition is barred by the doctrines of collateral estoppel, *res judicata* and waiver. The Court does not agree.

The doctrine of collateral estoppel, or issue preclusion, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir.1990). In deciding motions to compel arbitration, the Court considers only whether the statutory claims are subject to compulsory arbitration and whether the arbitration agreement was valid. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 665 (6th Cir. 2003) (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000)). As such,

---

[6]By challenging the Court's earlier decision in *Mason*, Respondent's Motion, Doc. #10, is, in essence, a factual challenge to this Court's subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Accordingly, the Court has "broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Engineering Group, Inc.* 790 F.3d 641, 647 (6th Cir. 2015) (citing *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). As such, the Court will consider the exhibits attached to the Motion, consisting of the Resolution and Solutions ADR programs and declarations.

the Court in *Mason* did not consider the specifics of the pre-arbitration meeting and, under the FAA and Sixth Circuit authority, could not do so. *Morrison,* 317 F.3d at 665. Because the "the precise issue raised in the present case," whether the pre-arbitration meeting in the Resolution ADR program was enforceable, was not "raised and actually litigated" in *Mason*, the doctrine of collateral estoppel does not apply. *Kosinski v. Comm'r*, 541 F.3d 671, 675 (6th Cir.2008) (citation omitted).

With respect to the doctrine of *res judicata*, Respondent must establish the following elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir.2009) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997)).

Although Respondent has satisfied the first two elements, the doctrine of *res judicata* fails since the third element has not been established. The issue of whether the pre-arbitration meeting in the Resolution ADR program is voidable was not litigated in *Mason* and, pursuant to the authority in *Morrison*, should not have been litigated. *Id.* at 665.

Finally, to the extent that Respondent argues that Petitioners have "waived" any challenge to the pre-arbitration meeting in the Resolution ADR program by

11

failing to raise this issue in *Mason*, because the issues before the Court were limited to whether the claims were subject to compulsory arbitration and whether the arbitration agreement was valid, *Morrison*, 317 F.3d at 665, the "voluntary relinquishment of a known right" has not been established. *State ex rel Gill v School Emps. Retirement Sys. of Ohio*, 121 Ohio St. 3d 567, 573, 906 N.E. 415 (2009).

Accordingly, Plaintiff's Petition is not barred by the doctrines of collateral estoppel, res judicata or waiver.

## III. CONCLUSION

For the reasons set forth above, the Petition to Compel Arbitration (Doc. #1) is SUSTAINED and Respondent's Motion to Compel Compliance with the Court's Order and the Federal Arbitration Act and to Dismiss Petitioners' Petition to Compel (Doc. #10) is OVERRULED. The requests of Respondent for attorney fees, pursuant to 28 U.S.C. § 1927, and of Petitioners for attorneys' fees, due to the "bad faith conduct" of Respondent, are DENIED. The conduct of the attorneys in this litigation does not "fall short of the obligations owed by a member of the bar to the court." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642 (6th Cir. 2006) (citations omitted).

The issue of who can attend the Level I meeting is solely within the authority of the arbitrator and must be resolved by the arbitrator.

Judgment shall be entered in favor of Petitioners and against Respondent.

12

The captioned case is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: May 28, 2020

WALTER H. RICE
UNITED STATES DISTRICT JUDGE